**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

   -vs-                                  **Consolidated Civil Case Nos. 10-C-771 & 11-C-1142 (Criminal Case Nos. 09-Cr-58; 97-Cr-205)**

**SAMUEL J. POTTS,**

        **Movant**.

## DECISION AND ORDER

The *pro se* Movant Samuel J. Potts ("Potts"), who is in federal custody, filed a motion for relief pursuant to 28 U.S.C. § 2255.[1] Potts challenges his guilty plea to one count of bank robbery in *United States v. Potts*, No. 09-Cr-58 (E.D. Wis.) (the "09 action") and the revocation of his supervised release in his previous bank robbery conviction, *United States v. Potts,* No. 97-Cr-205 (E.D. Wis.) (the "97 action").

## BACKGROUND

In the 97 action, this Court sentenced Potts to a concurrent prison term of 151 months for six counts of armed bank robbery. At that time, Potts was informed that the United States Sentencing Guidelines (the "Guidelines") ranges were mandatory.

---

[1] Potts was represented by counsel at various times during this action, but the history of that representation can best be described as difficult. Between January 2012 and January 2013 four different attorneys were appointed to represent Potts, but he became dissatisfied with each of them in turn, so each filed a motion to withdraw which was granted by the Court. Potts now appears *pro se*. In light of his position, this Decision and Order addresses the grounds raised in Amended Motions

On December 16, 2008, five months after Potts was released under supervision, he robbed a bank. Potts was later arrested and brought before this Court in the 09 action on charges of armed bank robbery. On February 2, 2009, Potts also appeared on charge of violating the conditions of his supervised release in the 97 action. (97 action ECF No. 48.)

On May 18, 2009, after conferring with his attorney, Martin Pruhs ("Pruhs") who was appointed to represent Potts in both actions, Potts plead guilty to a violation of 18 U.S.C. §§ 2113(a), (d). (09 action Plea Agreement.) (09 action ECF No. 17.) The plea agreement also encompassed the supervised release violation in the 97 action.

As part of the plea agreement, the Government agreed to recommend a sentencing reduction for acceptance of responsibility and a sentence at the low end of the applicable Guidelines range. (*Id.* at ¶¶ 20, 24.) In addition, the government agreed to recommend that the revoked sentence for the 1997 conviction run concurrently with that of his 2009 conviction. (*Id.* at ¶ 24.)

Paragraph 25 of the plea agreement addresses the "Court's Determinations at Sentencing," stating:

> The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendation to the sentencing court. The sentencing court will make its own determination regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The

> parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

(*Id.* at ¶ 25.)

The final page of the plea agreement contains acknowledgements and states "[m]y attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel." (*Id.* at 15.) Potts signed the plea agreement below the foregoing statement. Also on the final page is a statement that reads in relevant part, "I am the defendant's attorney. I carefully reviewed every part of this agreement with the defendant." (*Id.*) Pruhs' signature appears acknowledging the complete statement. After reviewing the plea agreement, the Court accepted Potts' guilty plea at a May 29, 2009, change of plea hearing. (09 action ECF No. 22.)

At a September 3, 2009, combined sentencing and revocation of supervised release hearing, this Court rejected the Government's recommendations. Instead of sentencing Potts to the 92- to 115-month sentence he expected (Tr. Evidentiary Hearing ("Tr.") 12) (ECF No. 26), the Court sentenced Potts to a total prison term of 240 months: 216 months of imprisonment for the 2009 offense to run consecutively with the remaining 24 months of the sentence for the 1997 offense. (09 action ECF Nos. 28-29; 97 action ECF Nos. 54-55.)

- 3 -

Potts appealed the 2009 conviction, sentence, and revocation of release. *See United States v. Potts*, Nos. 09-3301, 09-3319, 2010 WL 1473977, 371 F. App'x. 675 (7th Cir. April 14, 2010). On appeal, Pruhs filed an *Anders* brief,[2] contending that Potts' appeals were frivolous and asking to withdraw as counsel. *Id.* Potts disagreed. *Id.* The Court of Appeals for the Seventh Circuit agreed with Pruhs, granting his motions to withdraw, and dismissing the appeals. *Id.* at 676.

Potts then filed a motion pursuant to 28 U.S.C. § 2255 to vacate his sentence, claiming ineffective assistance of counsel. The initial § 2255 motion referenced two Eastern District of Wisconsin criminal case numbers, the 97 action and "90-Cr-58." (*See* ECF Nos. 1 at 1.) However, because Potts was not a defendant in 90-Cr-58, the Clerk of Court filed Potts' motion in the 97 action and opened the 10 civil action.

On June 30, 2011, Potts filed an Amended § 2255 Motion correctly citing the 97 and 09 actions and clearly challenging the revocation of his supervised release in the 97 action as well as his conviction in the 09 action. (ECF No. 11.) Inferring that Potts intended to file his motion in both criminal cases, the Court directed the Clerk of Court to file Potts' original motion in the 09 action and to open an additional civil action, the 11 civil action. (*See* ECF Nos. 22.)

After conducting an evidentiary hearing and full briefing from the parties, the

---

[2]An appellate brief reviewing anything in the record that might arguably support an appeal and indicating that "counsel finds [the appellant's] case to be wholly frivolous, after a conscientious examination of it," and an accompanying request to withdraw is commonly referred to as an "*Anders* brief," based on the Supreme Court's decision in *Anders v. State of California*, 386 U.S. 738, 744 (1967), discussing the manner in which counsel should proceed in such circumstances.

- 4 -

Court finds that the grounds and the contentions with respect to the two civil actions are identical. Therefore, pursuant to Federal Rule of Civil Procedure 42 and Civil Local Rule 42 (E.D. Wis.), the two civil actions are consolidated for decision and all further proceedings. Consistent with Civil Local Rule 42(b), all papers and docketing must be filed in the lower numbered case, the 10 civil action.

## ANALYSIS

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Potts' Amended Motions (ECF Nos. 11) raise four interrelated grounds for relief pursuant to § 2255. At its base, Potts contends that Pruhs provided him with ineffective assistance twice during Pruhs' representation. Claims of ineffective assistance are properly raised in a § 2255 motion. *See Massaro v. United States*, 538 U.S. 500 (2003). First, Potts claims that Pruhs was ineffective during the plea negotiation and sentencing processes because Pruhs did not explain to Potts that the Government's sentencing recommendations were not binding on the Court. Therefore, Potts asserts his guilty plea was not voluntary and violated his constitutional rights. Second, Potts contends that Pruhs was constitutionally ineffective on direct appeal because Pruhs filed an *Anders* brief.

## Plea Negotiations

To be valid, a guilty plea must be voluntary. *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985). A plea agreement is deemed voluntary when the defense counsel's advice is "within the range of competence demanded of attorneys in criminal cases." *See id.* (Citation omitted).

For purposes of his motion pursuant to § 2255 to establish a claim of ineffective assistance of counsel with respect to his guilty plea, Potts must show "(1) that counsel's performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty and would have insisted on going to trial." *Bethel v. United States*, 458 F.3d 711, 716 (7th Cir. 2006). Because many questions about the facts and how a court or jury will apply the law to those facts cannot be answered by counsel with certitude, "[w]aiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts." *Id.* at 717 (quoting *McMann v. Richardson,* 397 U.S. 759, 70 (1970)).

During the February 24, 2012, evidentiary hearing, Potts claimed that Pruhs never told him that judges were no longer bound by the Government's sentencing recommendations. (*See* Tr. 7-11.) Further, Potts testified that Pruhs did not tell him that if the Court accepted the agreement but discounted the Government's recommendations, Potts would be unable to withdraw his guilty plea and proceed to

- 6 -

Case 2:10-cv-00771-RTR   Filed 08/12/13   Page 6 of 10   Document 65

trial.  (Tr. 12.)  Potts admitted that a standard disclaimer appeared in the plea agreement, which informs defendants and their attorneys that sentencing judges are not bound by the terms of the sentencing recommendation.  (Tr. 22.)  However, Potts claimed that he did not read the text of the agreement; Pruhs merely summarized it for him, without mentioning the chance that the Court might discount the Government's recommendations.  (Tr. 20.)

Potts' testimony was contradicted by that of Pruhs.  Pruhs testified that he not only informed Potts that the Guidelines were not mandatory ("I am absolutely certain that I also covered [the risks of pleading guilty] with Mr. Potts") (Tr. 38), but that a major "theme" of his discussions with Potts was the likelihood that the Court would sentence Potts above the Government's recommendation.  (Tr. 45.)  In addition, Pruhs testified that it is his standard procedure to discuss the potential for the sentencing judge to discount the Government's recommendations, and that he was sure that Potts understood that risk.  (Tr. 37-39.)

Pruhs' testimony is more convincing than that of Potts.  Pruhs' testimony established that it is his standard procedure to discuss with his clients the possibility that the sentencing judge will disregard the Government's recommendations.  This standard procedure lends great credence to Pruhs' claim that he is "absolutely certain" that he discussed these concerns with Potts.  In weighing the testimony, the Court also has considered the interests of Pruhs — an officer of this Court and a well-regarded defense attorney — against those of Potts, who has an extensive criminal history and

a considerable interest in prevailing on his § 2255 motions (potentially reducing his sentence by half). Pruhs' testimony is also consistent with the acknowledgements in the final page of the plea agreement signed by Potts, Pruhs, and the prosecutor. Based on the foregoing, the Court concludes that Pruhs informed Potts of the risk of pleading guilty to the charge and the possibility that this Court might sentence him to a term greater than that recommended by the government. Potts' testimony to the contrary is not credible.

Pruhs' performance did not fall "below an objective standard of reasonableness." *Bethel*, 458 F.3d at 716. Therefore, Potts has not established that Pruhs provided ineffective assistance to him during the plea negotiation and sentencing processes.

### *Anders* Brief

Potts also contends that Pruhs provided ineffective assistance when he filed an *Anders* brief on appeal instead of arguing Potts' appeals. However, filing an *Anders* brief does not equate with providing ineffective assistance.

> Neither paid nor appointed counsel may deliberately mislead the court with respect to either the facts or the law, or consume the time and the energies of the court or the opposing party by advancing frivolous arguments. An attorney, whether appointed or paid, is therefore under an ethical obligation to refuse to prosecute a frivolous appeal.

*McCoy v. Court of Appeals of Wis., Dist. 1*, 486 U.S. 429, 436 (1988); *White v. United States*, No. 00-1533, 2001 WL 1530578, 23 F.App'x. 570, 572 (7th Cir. Nov. 26, 2001). The Court of Appeals for the Seventh Circuit concurred with Pruhs'

- 8 -

determination that any potential arguments on appeals were frivolous and dismissed Potts' appeals. Thus, Pruhs complied with his ethical obligations by filing an *Anders* brief, *Potts*, 371 F.App'x. at 675, and Potts has no grounds for relief under § 2255 based on that filing. Because Pruhs' performance as counsel during the plea negotiation, sentencing, and appeal processes did not fall "below an objective standard of reasonableness," Potts' § 2255 motions are denied.

Under Rule 11 of the Rules Governing Section 2255 Cases, the Court must issue or deny a certificate of appealability when entering a final order adverse to a movant. To obtain a certificate of appealability, the movant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter agree that) the [motion] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). Given the controlling case law, reasonable jurists could not debate whether Potts has made a substantial showing of the denial of his constitutional rights. Therefore, the Court declines to issue a certificate of appealability.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Civil Case Numbers 10-C-771 & 11-C-1142 are **CONSOLIDATED** for all future proceedings;

All future filings **MUST BE FILED AND DOCKETED** in the lower case number, Case No. 10-C-771;

Potts' amended motions for relief pursuant to 28 U.S.C. § 2255 (ECF Nos. 11 & 11) are **DENIED**;

These actions are **DISMISSED**; and

The Court **DECLINES TO ISSUE** a certificate of appealability; and

The Clerk of Court is **DIRECTED** to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 12th day of August, 2013.

                                    **BY THE COURT:**

                                    *[signature]*
                                    **HON. RUDOLPH T. RANDA**
                                    **U.S. District Judge**